| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | NOT FOR PUBLICATION |
|---|---|
| NASSR ABDULLAH SALEH and NASSR'S<br>DELI & GROCERY, INC.,<br><br>                                       Plaintiffs,<br><br>– against –<br><br>UNITED STATES OF AMERICA,<br>DEPARTMENT OF AGRICULTURE FOOD<br>AND NUTRITION SERVICES,<br><br>                                       Defendant. | **MEMORANDUM & ORDER**<br><br>13-CV-4095 (ERK) (RLM) |

KORMAN, J.:

Plaintiffs Nassr Abdullah Saleh and Nassr's Deli & Grocery, Inc. commenced this action on July 18, 2013 against the United States Department of Agriculture, Food and Nutrition Service challenging the agency's assessment of a civil monetary penalty. The defendant has moved to dismiss the complaint or, in the alternative, for summary judgment.

## FACTS[1]

Plaintiff Nassr Abdullah Saleh (Saleh) was the sole shareholder and chief executive officer of corporate plaintiff Nassr's Deli & Grocery, Inc. (the "Deli"). Def.'s Decl., ECF No. 14, Exs. A, B. The Deli operated in Brooklyn's Red Hook neighborhood and participated in the United States Department of Agriculture's Supplemental Nutrition Assistance Program ("SNAP"), administered by the Food and Nutrition Service ("FNS"). Compl. ¶ 4, ECF No. 1.

---

[1] The facts described here are derived from the various memoranda and exhibits filed for this motion. It is worth noting that although the defendants filed a Rule 56.1 statement of undisputed facts, the plaintiffs did not file a controverting statement as required under the rule. Local Civil Rule 56.1(c). "A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (citing *Gubitosi v. Kapica,* 154 F.3d 30, 31 n.1 (2d Cir.1998)); *Taylor & Fulton Packing, LLC v. Marco Int'l Foods, LLC*, No. 09-CV-2614, 2011 WL 6329194, at *4 (E.D.N.Y. Dec. 16, 2011) (collecting cases). Even so, a Rule 56.1 statement cannot make factual assertions that are unsupported by the record. *Taylor & Fulton Packing, LLC*, 2011 WL 6329194, at *4. Hence, the facts presented here are only those that find support in the documentary exhibits, even where a particular assertion has not been explicitly contested by the parties.

SNAP was formerly known as the Food Stamp Program and was created to "alleviate . . . hunger and malnutrition." 7 U.S.C. § 2011.

On February 5, 2009, FNS sent a letter addressed to "Nassr Saleh, Owner" charging his "firm" with food stamp trafficking in violation of SNAP regulations. Def.'s Decl., Ex. D. In short, FNS alleged that SNAP benefits were being abused at the Deli through a series of "unusual, irregular, and inexplicable" transactions. *Id.* This was followed by a letter on March 12, 2009 notifying Saleh that the Deli was permanently disqualified from SNAP per 7 C.F.R. § 278.6. Def.'s Decl., Ex. E. FNS included in that letter notice that, pursuant to FNS regulations, Saleh would be subject to a civil monetary penalty if he sold or transferred the business while disqualified. *Id.*; Compl. ¶ 6.

The Deli challenged the disqualification in federal court, filing suit on July 15, 2010. *Nassr's Deli & Grocery, Inc. v. United States of America and the U.S. Dep't of Agriculture*, 10-CV-3236 (RMM) (SMG). That suit ended on October 26, 2011 with a stipulation and order of dismissal with prejudice agreed to between the parties. Pls.' Decl. ECF No. 16, Ex. I. In the stipulation, the plaintiff—the Deli—agreed "that no further suit will be instituted for the same causes of action which has been asserted herein or for any other causes of action arising out of the incidents or circumstances which gave rise to this lawsuit." *Id.*

On June 26, 2012, the Deli was sold to the Red Hook Deli & Grocery, Inc. Compl., at 23-32; Pl.'s Decl., Ex. B, C, E. The sale, for $20,000, included the Deli's inventory, machines, fixtures, furniture, and goodwill. *Id.* It also included a provision by which the transferor would not open a competing business within five blocks of the site in any direction. *Id.* The agreement is listed as between the Deli and Red Hook Deli & Grocery, Inc., with Saleh signing on behalf of the Deli. *Id.* Ali M. Albaadani signed on behalf of the Red Hook Deli. *Id.* Elsewhere, Saleh

signed—apparently on behalf of himself, as no corporate identity is indicated—for the assignment and assumption of the lease. Pls.' Decl., Ex. E.

FNS sent a letter dated April 9, 2013 to Saleh at the Deli's address informing him that it was assessing a $44,000 penalty against him because he transferred the Deli while the Deli was permanently disqualified from SNAP. Def.'s Decl., Ex. F; Pls.' Decl., Ex. G. FNS asserted authority for the penalty under 7 C.F.R. § 278.6(f)(2). *Id.* While the letter was addressed to Saleh personally, the bill for collection attached to the letter identified the Deli as the "payer." *Id.* After Saleh and the Deli requested administrative review of the decision, Def.'s Decl., Ex. G, FNS issued a letter containing its Final Agency Determination upholding the penalty against Saleh on June 13, 2013. Pls.' Decl., Ex. H; Def.'s Decl., Ex. I.

The plaintiffs do not dispute the SNAP disqualification, that FNS may assess penalties against a business transferred while disqualified, or the amount of the penalty. Pls.' Opp'n Mem. at 2-3, ECF No. 17. The sole apparent contention of the plaintiffs' suit appears to be that the penalty may only properly be assessed against the corporate Deli, and not against Saleh personally. *Id.* at 2, 10, 14-15; Compl. ¶¶ 14(E), 15. Indeed, the Deli appears to be inviting the penalty to be levied against itself so long as Saleh is excused. *See* Compl. ¶ 14(E) ("The penalty should be imposed upon the plaintiff, Nassr's Deli, as the responsible and liable party . . . ."); Pl.'s Opp'n Memo, at 14-15 ("[T]he Plaintiffs respectfully request that the Court set aside the decision and determination of the Defendants imposing and assessing a Transfer of Ownership Civil Money Penalty against the Plaintif[f] Nassr Abdullah Saleh, and imposing and assessing said civil money penalty solely against the Plaintiff Nassr's Deli & Grocery, Inc. . . . .").

## STANDARD OF REVIEW

The United States Attorney on behalf of the defendant has moved to dismiss the plaintiffs' complaint or for summary judgment. Def.'s Mot. to Dismiss or Mot. for Summ. J.

("Def.'s Mot."), ECF No. 11. In support, it has attached ten exhibits which were not included in the initial pleadings. Def.'s Decl., ECF No. 14. The plaintiffs, likewise, have attached nine exhibits to their opposition memo, three of which were not included in their initial pleadings. Pls.' Decl., Exs. A, F, I. "[W]hen matters outside the pleadings are presented in response to a 12(b)(6) motion[] the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988); *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000). Formal notice of the court's intention to convert the motion into one for summary judgment is not required "where a party 'should reasonably have recognized the possibility that the motion might be converted into one for summary judgment [and] was [neither] taken by surprise [nor] deprived of a reasonable opportunity to meet facts outside the pleadings.'" *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) (quoting *Villante v. Dep't of Corr.*, 786 F.2d 516, 521 (2d Cir. 1986)) (alterations in original). "A party cannot complain of lack of a reasonable opportunity to present all material relevant to a motion for summary judgment when both parties have filed exhibits, affidavits, counter-affidavits, depositions, etc. in support of and in opposition to a motion to dismiss." *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985); *Groden v. Random House, Inc.*, 61 F.3d 1045, 1053 (2d Cir. 1995). Moreover, where the moving party explicitly seeks summary judgment as an alternate form of relief, it is a clear sign to the opposing party that conversion of the motion to summary judgment is possible. *Groden*, 61 F.3d at 1053.

The plaintiffs here were on full notice that the defendant's motion could be converted to one for summary judgment and had ample opportunity to respond—an opportunity they took. The plaintiffs were on notice from the beginning that the defendant intended to move for

dismissal or summary judgment. Def.'s Letter (Oct. 28, 2013), ECF No. 6. In their response to the defendant's motion, the plaintiffs included their own factual exhibits, indicating their recognition that summary judgment could be granted. Pls.' Decl. Indeed, the plaintiffs' response to the motion included a statement of the standard of review on summary judgment and argued that the standard had not been met in this case. Pls.' Opp'n Mem. at 11-13. Thus, I take the motion here as one for summary judgment.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether there is a genuine issue of material fact, the court must resolve all ambiguities, and draw all inferences, against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Nevertheless, the non-moving party may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *Anderson*, 477 U.S. at 256. "Conclusory allegations will not suffice to create a genuine issue," and "[t]here must be more than a 'scintilla of evidence'" to defeat a summary judgment motion. *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252). "The nonmoving party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law." *Gayle v. Harry's Nurses Registry, Inc.*, No. 07-CV-4672 (NGG) (MDG), 2012 WL 4174401, at *3 (E.D.N.Y. Sept. 18, 2012).

In challenging the agency action here, the plaintiffs are entitled to de novo review by the court. 7 U.S.C. § 2023(a)(15). Determining who bears the burden of proof is a slightly more difficult proposition. While the statute is silent and the Second Circuit has not resolved the issue, "other circuits have held consistently that, given the nature of the statutory scheme, a store owner who seeks to set aside an agency action bears the burden of proof." *Fells v. United States*, 627 F.3d 1250, 1253 (7th Cir. 2010) (citing *Kim v. United States,* 121 F.3d 1269, 1272 (9th Cir. 1997); *Warren v. United States,* 932 F.2d 582, 586 (6th Cir. 1991); *Redmond v. United States,* 507 F.2d 1007, 1011–12 (5th Cir. 1975)).

## DISCUSSION

The U.S. Attorney asserts two bases which it claims entitle the defendant to judgment. First, it argues that the 2011 stipulation and order ending the Deli's previous lawsuit also bars the claims presented here. Def.'s Mem. at 8-10. Second, it argues that it is entitled to summary judgment because the transfer penalty was properly assessed against plaintiff Saleh. *Id.* at 10-13. I pass over the first argument based on the stipulation and proceed to the merits of the case.

    *A.    Existence of Transfer*

The plaintiffs' position on whether the Deli was actually sold is unclear and inconsistent. In some parts of their pleadings, the plaintiffs seem to contest that the Deli was transferred. *See* Compl. ¶¶ 11, 14(B); Pls.' Opp'n Mem. at 9. For instance, the plaintiffs contend that the bill of sale was "inaccurate and defective" because the store was insolvent, the bill of sale was improperly prepared and executed, and the sale was intended to convey merchandise and supplies only, among other contentions. Compl. ¶ 12. But in other places the plaintiffs appear to concede that the business was transferred. *See* Compl. ¶ 14(E); Pls.' Opp'n Mem., pages 3-4; Def.'s Decl., Ex. J. In their memorandum opposing summary judgment, the plaintiffs state that "[t]he transfer of ownership of Nassr's Deli & Grocery, Inc. occurred on or about June 26, 2012

for the sum of $20,000.00 by contract of sale and bill of sale from Nassr's Deli & Grocery, Inc." Pls.' Opp'n Mem. at 3-4. In their complaint, the plaintiffs indicate that the business was transferred by the Deli only, not Saleh. Compl. ¶ 14. Indeed, plaintiffs' attorney wrote in a letter to opposing counsel that she would "affirmatively state that the corporation that held the Food Stamp license sold or transferred the subject business," while contesting that Saleh as an individual had effectuated the transfer. Def.'s Decl., Ex. J.

It is worth noting that the plaintiffs' failure to file a counter-statement of facts as required by Local Rule 56.1 could end the inquiry on this issue. In its statement of undisputed facts, the defendant stated that the Deli was transferred or sold via legal documents signed by Saleh. Defendant's Local Rule 56.1 Statement ¶¶ 24-25. Because of the plaintiffs' failure to file a statement controverting that assertion, the defendant's statements are "deemed to be admitted for purposes of the motion." Local Rule 56.1(c).

Even setting aside the consequences of the plaintiffs' failure to comply with the Local Rule 56.1 requirements, the facts and documentation presented for this motion indicate that there is no genuine dispute of fact as to the transfer of the Deli. In *Thakor v. United States,* 55 F. Supp. 2d 1103 (D. Nev. 1999), the district judge upheld an agency determination that a store had been transferred where FNS produced evidence such as escrow instructions transferring the store's "property, materials, supplies, merchandise, equipment, or other inventory . . . along with the name, goodwill, tenant improvements and a covenant not to compete, in exchange for a total consideration of $30,000." *Id.* at 1106. Similarly, in *Estremera v. United States,* 442 F.3d 580 (7th Cir. 2006), the Seventh Circuit upheld an agency action where FNS produced a bill of sale for the store at issue, a real estate closing statement confirming the sale, and a lease between the store owner and purchaser, among other documentation. In contrast, courts have questioned whether a transfer occurred only where the plaintiffs have submitted evidence via affidavits

7

clearly calling the FNS determination into question. *See Moksin v. U.S. Dep't of Agric., Food & Nutrition Serv.*, No. 1:12-CV-597, 2013 WL 5923257, at *9 (S.D. Ohio Nov. 4, 2013) (denying summary judgment where plaintiffs submitted affidavit evidence from purported buyer that she only leased space and had not purchased the inventory, fixtures, or goodwill from the previous owners); *Huggins v. United States*, 858 F. Supp. 2d 694, 705 (N.D. Miss. 2012) (finding that no transfer had occurred where various documents indicated the plaintiff had dissolved his business before leasing the vacant former store space to a family member).

Here, the documentation overwhelmingly supports the contention that the business was, in fact, transferred. The plaintiffs themselves included in their complaint the documentation showing a signed and notarized bill of sale for the Deli, including the Deli's inventory, machines, fixtures, furniture, and goodwill, and including a covenant not to compete. Compl. at 23-32. Lest there be any doubt, the plaintiffs attached the same documentation to their memorandum opposing this motion. Pls.' Decl., Exs. B, C, E. This documentation is almost identical to that presented in *Thakor* and *Estrema*, where the courts upheld the agency's determinations. Indeed, it is hard to imagine better evidence of the transfer of the Deli than a bill of sale, signed by the plaintiff, transferring the Deli business.

Significantly, the plaintiffs have presented no evidence or documentation to the contrary. The plaintiffs here have not submitted affidavits asserting that there was no transfer or offering an alternative explanation for the bill of sale. Mere allegations and denials in the plaintiffs' complaint and memorandum opposing summary judgment cannot create a genuine issue of fact unless supported by affidavits or other admissible evidence. *Gayle*, 2012 WL 4174401, at *3.

The only evidence the plaintiffs have produced that even arguably casts doubt on the sale's validity is still insufficient to create a genuine issue of material fact. The plaintiffs have presented a lease agreement between ASJN Realty and 2216-2220 Surf Realty Corp. for the

Deli's location at 603 Clinton Street. Pls.' Decl., Ex. D. Neither Saleh nor the Deli is included as a party to that lease. *Id.* Even so, this is insufficient to defeat a motion for summary judgment. There is no dispute that the Deli actually operated out of the Clinton Street location, indicating that there is some mechanism by which the Deli had possession of the site, even if not in the lease the plaintiffs submitted. This fact is further supported by the document in which Saleh assigned the lease of the premises to Ali M. Albaadani. Pls.' Decl., Ex. E.

To the extent the plaintiffs contend the business was not transferred, absent any evidentiary support, there is no genuine issue of material fact as to that point. Moreover, the plaintiffs concede that "the sale or transfer of ownership after a determination of permanent disqualification is subject to a civil money penalty." Pls.' Opp'n Mem. at 2. Accordingly, the only determination left to be made is which party or parties may be subject to that penalty.

    B.    *Application of Transfer Penalty to Plaintiff Saleh*

The plaintiffs have asserted that FNS's actions in this case are "not a proper application of [the] defendants' regulations resulting in the sanction herein being unwarran[t]ed in law and without justification in fact." Compl. ¶ 14. Elsewhere, the plaintiffs contend that FNS's action was arbitrary and capricious. Pls.' Opp'n Mem. at 3. Yet, plaintiffs do not dispute the SNAP disqualification, that FNS may assess penalties against a business transferred while disqualified, or the penalty amount. Pls.' Opp'n Mem. at 2-3. Moreover, as noted above, even if the plaintiffs do not concede that the business was transferred, there is no genuine dispute as to this point. Thus, the plaintiffs' entire argument is necessarily premised on the assertion that the defendant may properly levy the penalty against only the Deli and not against Saleh personally. This argument fails.

The plaintiffs make much of the fact that FNS inconsistently referred to the wrongdoer in this case. *See, e.g.,* Pls.' Opp'n Mem. at 5. For instance, the April 9, 2013 letter initially

9

assessing the transfer penalty was addressed to "Nassr Abdullah Saleh," included a salutation to "Sir or Madam," made repeated references to "your firm" (indicating the letter was addressed to an individual instead of the firm itself), and then on the bill itself listed the "payer" as "Nassr's Deli & Grocery Inc." Def.'s Decl., Ex. F. Certainly, this is not a model of clarity. But any ambiguity is beside the point because, for the present purposes, the corporation may be treated as Saleh's mere alter ego, allowing the government to "pierce the corporate veil."

In most instances, "corporate veil-piercing is governed by the law of the place of incorporation." *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 430 (S.D.N.Y. 2010) (citing *United States v. Funds Held in the Name or for the Benefit of Wetterer,* 210 F.3d 96, 106 (2d Cir. 2000)). Reflecting a reluctance to pierce the corporate veil, the Second Circuit has articulated an extensive list of factors for courts to consider when determining whether to pierce the veil. *See Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130, 134 (2d Cir. 1997) (citing *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991)). Based on the evidence presented, it is unlikely that the government could successfully pierce the corporate veil on state law grounds in this motion for summary judgment. That does not, however, necessitate a ruling for the plaintiffs because the Second Circuit has carved out a lesser standard for veil-piercing where the case involves federal law.

Under Second Circuit precedents, the corporate veil may be pierced where necessary to give effect to federal regulations, "even if the traditional conditions for piercing the corporate veil are not met." *Leddy v. Standard Drywall, Inc.*, 875 F.2d 383, 388 (2d Cir. 1989); *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1220 (2d Cir. 1987); *Finkel v. Lite Tron Ltd.*, No. 09-CV-01253 JG VVP, 2010 WL 4392723, at *6 (E.D.N.Y. Oct. 29, 2010). This reflects the Supreme Court's position of "consistently refus[ing] to give effect to the corporate form where it is interposed to defeat legislative policies." *First Nat'l City Bank v. Banco Para El Comercio*

*Exterior de Cuba*, 462 U.S. 611, 630 (1983). This refusal is particularly apparent where the corporate entity is under the extensive and exclusive control of another. *Id.* Indeed, "federal courts have found the owners of a corporation liable as a matter of law under federal statutes based solely on the owners' total and exclusive domination of the corporation." *Lowen*, 829 F.2d at 1221.

While the bulk of such cases disregarding the corporate form have arisen in the ERISA context, in at least one instance the Second Circuit has pierced the corporate veil to address individuals who violated food stamp regulations. In *Abdelaziz v. United States, Through Dep't of Agric.*, 837 F.2d 95, 98 (2d Cir. 1988), it held that a disqualification for trafficking food stamps applied not only to a corporate store, but to the store's co-owners. *Id.* at 98. In the case, the plaintiffs co-owned Midland Meat Town, Inc., a grocery store in Syracuse, New York. *Id.* at 96. After an investigation by the government revealed that the plaintiffs were engaged in food stamp trafficking, the FNS issued a disqualification order. *Id.* Notwithstanding the fact that the final disqualification order seemingly specifying the store and not the individuals for disqualification, the Second Circuit held that the order could also be applied to the owners because of their total control over the corporation and their personal involvement in the violations. *Id.* at 98. A contrary holding would thwart Congress's purpose of preventing fraud in the food stamps program. *Id.*

Nor is the Second Circuit alone in disregarding the corporate form where it comes to SNAP violations. In 2006, the Seventh Circuit assumed without explicitly deciding that an incorporated store's sole stockholder and director could be personally liable for the transfer penalty where the transferor was listed as the corporate store. *Estremera v. United States*, 442 F.3d 580, 582 (7th Cir. 2006). Similarly, a district court in the Southern District of California ruled that "[c]onsidering persuasive authority and Congress' deterrence objective, . . . the
11

[transfer penalty] can be validly assessed against Plaintiffs in their individual capacities." *Garmo v. United States*, No. 10-CV-2185-JM-BLM, 2012 WL 162358, at *2 (S.D. Cal. Jan. 18, 2012).

The plaintiff here falls squarely within those precedents. Like the plaintiffs in *Abdelaziz*, *Estrema*, and *Garmo*, Saleh was the Deli's sole owner and primary operator. He exercised complete and exclusive control over the corporation. Further, like the plaintiffs in *Abdelaziz*, Saleh is the individual actor who undertook the action giving rise to the FNS penalty. In *Abdelaziz*, that action involved food stamp trafficking. Here, the action is the transfer of the business. Saleh signed all forms relating to that transfer, making him the actor responsible for the penalized offense. Pls.' Decl., Exs. B, C, E. Because the corporate form is properly disregarded in this case, Saleh's personal involvement in the transfer of the Deli business exposes him to the civil money penalty that FNS seeks to impose upon him. Far from acting in an arbitrary and capricious manner as alleged by the plaintiffs, FNS has acted within the letter and the spirit of the law and its own regulations.

## CONCLUSION

The defendant's motion for summary judgment is granted.

**SO ORDERED.**

Brooklyn, New York
September 30, 2014

*Edward R. Korman*
Edward R. Korman
Senior United States District Judge